UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

| | |
|---|---|
| STEPHEN BUSHANSKY, Individually and on Behalf of All Others Similarly Situated<br><br>                    Plaintiff,<br><br>          v.<br><br>SMARTSHEET INC., MARK MADER, ALISSA ABDULLAH, GEOFFREY BARKER, MICHAEL GREGOIRE, MATTHEW MCILWAIN, KATIE ROONEY, KHOZEMA SIPCHANDLER, ROWAN TROLLOPE, JAMES WHITE, and MAGDALENA YESIL,<br><br>                    Defendants. | Case No. 1:24-cv-<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Bushansky ("Plaintiff"), individually and on behalf of all others similarly situated, by the undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to Plaintiff's own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

## NATURE OF THE ACTION

1.      This action is brought by Plaintiff against Smartsheet, Inc. ("Smartsheet" or the "Company") and the members of Smartsheet's Board ("Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"). Plaintiff's claims arise in connection with the solicitation of public stockholders of Smartsheet to vote in favor of a merger transaction

("Merger") pursuant to which Smartsheet will merge into affiliates of Blackstone Inc. ("Blackstone"), Vista Equity Partners Management, LLC ("Vista"), and Platinum Falcon B 2018 RSC Limited ("Platinum Falcon"), an affiliate of the Abu Dhabi Investment Authority ("ADIA"), in exchange for a payment of $56.50 per share in cash ("Merger Consideration") to Smartsheet stockholders.

2.      On September 24, 2024, Smartsheet issued a press release announcing the Merger.

3.      On November 4, 2024, Defendants authorized the filing of a false and misleading definitive proxy on Schedule 14A ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, with the aim of soliciting Smartsheet stockholders to vote for the Merger at a special meeting of Smartsheet stockholders to be held on December 9, 2024 ("Stockholder Vote"). The Proxy advises Smartsheet stockholders that "*[y]our vote is very important, regardless of the number of shares of our common stock that you own*."

4.      As detailed below, the Proxy contains materially false statements, and material omissions that render statements therein misleading "half-truths." These materially false and misleading statements and omissions violate the above-referenced Exchange Act provisions and Rule 14a-9.

5.      The violations referenced above must be cured in advance of the Stockholder Vote to enable Smartsheet stockholders to cast informed votes with respect to the Merger. Therefore, Plaintiff seeks to enjoin Defendants from taking any further steps to consummate the Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by Plaintiff and similarly-

situated investors as a result of such violations.[1]

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.    This Court has personal jurisdiction over each of the Defendants because each has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being hauled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiff's securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

8.    Venue is proper in this District under 15 U.S.C. § 78aa(a) and 28 U.S.C. § 1391(b) because an act or transaction constituting the violations alleged herein occurred in this District. Specifically, (i) Smartsheet's stock traded under the ticker "SMAR" on the New York Stock

---

[1] A copy of the Proxy is available at:
https://www.sec.gov/Archives/edgar/data/1366561/000162828024044846/smartsheetdefm14a1142024.htm

Exchange ("NYSE"), which is headquartered in this District; (ii) the false and misleading Proxy was filed with the SEC, which has a regional office in this District; and (iii) Smartsheet retained Innisfree M&A Incorporated, a proxy solicitor, which is headquartered in this District. *See Avalon Holdings Corp. v. Gentile*, 2019 WL 4640206, at *4 (S.D.N.Y. Sept. 24, 2019) (venue proper for Exchange Act claim in Southern District of New York under 15 U.S.C. § 78aa(a) because stock traded on the NYSE) (citing *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003)).

## PARTIES

9.    Plaintiff is and has been a stockholder of Smartsheet common stock at all relevant times.

10.    Defendant Smartsheet is a Washington corporation with its principal executive offices located at 500 108th Ave NE, Suite 200, Bellevue, Washington 98004. Smartsheet that develops and sells enterprise workplace management and collaboration software. It trades under the ticker "SMAR" on the NYSE.

11.    Defendant Mark Mader ("Mader") presently serves as President and Chief Executive Officer ("CEO") of Smartsheet, and served as a member of the Board at all relevant times. Defendant Mader signed the Proxy.

12.    Defendant Alissa Abdullah served as a member of the Board at all relevant times.

13.    Defendant Geoffrey T. Barker served as a member of the Board at all relevant times.

14.    Defendant Michael Gregoire ("Gregoire") served as Chair of the Board at all relevant times. Defendant Gregoire signed the Proxy, and served on the Transaction Committee (as defined below).

15.    Defendant Matthew McIlwain ("McIlwain") served as a member of the Board, and as a member of the Transaction Committee, at all relevant times. Defendant McIlwain is a

managing director at Madrona Venture Group ("Madrona"), a prominent venture capital ("VC") firm, where he focuses on investments in software companies.

16.    Defendant Katie Rooney ("Rooney") served as a member of the Board, and as a member of the Transaction Committee, at all relevant times.

17.    Defendant Khozema Shipchandler ("Shipchandler") served as a member of the Board, and as a member of the Transaction Committee, at all relevant times.

18.    Defendant Rowan Trollope served as a member of the Board at all relevant times.

19.    Defendant James N. White served as a member of the Board at all relevant times.

20.    Defendant Magdalena Yesil served as a member of the Board at all relevant times.

21.    Defendants identified in paragraphs 11 to 20 are collectively referred to herein as the "Individual Defendants," and together with Smartsheet, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS[2]

### Blackstone and Vista Initiate Discussions With Smartsheet Concerning an Acquisition

22.    On June 12 and June 20, 2023, Defendant Mader met separately with Blackstone and Vista, respectively, during which they discussed aspects of Smartsheet's business and strategic opportunities. Preliminary discussions concerning strategic opportunities continued in August and September 2023, when Mader met separately with a financial sponsor ("Party A"), and Vista, to discuss aspects of Smartsheet's business.

23.    On January 21, 2024, Blackstone and Vista (which the Proxy refers to as the "Consortium"), called Mader to indicate that they both were "very interested" in acquiring Smartsheet, and informed Mader that he may receive a written proposal from them in the near future.

---

[2] Any emphasis in quoted language is added, unless otherwise noted.

24.     On January 24, 2024, Blackstone and Vista submitted a non-binding indication of interest to acquire all of the outstanding shares of Smartsheet's common stock for $56.25 per share in cash ("January 24 Proposal"), subject to due diligence.

25.     On January 25, 2024, the Board met with members of senior management, and representatives of Qatalyst Partners LP ("Qatalyst") and Fenwick & West LLP ("Fenwick") (outside legal counsel to Smartsheet), to discuss the January 24 Proposal. After the discussion, the Board determined to reject the January 24 Proposal, which decision was conveyed by Qatalyst to Blackstone and Vista.

26.     On February 2, 2024, Blackstone called Mader to discuss Blackstone's continued interest in Smartsheet.

27.     On March 22, 2024, after discussions with Blackstone had resumed, Smartsheet announced the appointment of Defendant Rooney to the Board. At the time, Rooney was the Global Chief Financial Officer ("CFO") and Chief Operating Officer ("COO") of publicly-traded Alight, Inc. (NYSE: ALIT) ("Alight"). As further discussed below, Blackstone had acquired Alight from the human resources division of Aon (NYSE: AON) in February 2017 for $4.8 billion in cash, and later took Alight public in July 2021 via a merger with a special purpose acquisition company, or SPAC. After Alight went public, through September 2023, Blackstone had two representatives on the Alight board of directors, and one representative on the Alight board's compensation committee, which approved the compensation of Rooney and other senior Alight executives. From 2020 to 2023, while Blackstone executives were responsible for determining her compensation, Rooney earned approximately $31.5 million.

28.     On March 25, 2024, a representative of Kirkland & Ellis LLP ("Kirkland"), outside counsel to Vista, notified Smartsheet that Vista had begun acquiring shares of Smartsheet common

stock through open market transactions.

29.     On March 26, 2024, Mader met with Vista to discuss its accumulation of Smartsheet shares.

30.     On June 18, 2024, Mader met with another financial sponsor ("Party B") to discuss Smartsheet's business.

31.     On June 24, 2024, Mader had dinner with Blackstone and Vista at their request to discuss Smartsheet's business.

**The Board Forms the Transaction Committee to Negotiate With Blackstone and Vista and Other Potential Counterparties**

32.     On June 27, 2024, Mader updated the Board concerning his conversations with Blackstone and Vista. Thereafter, the Board approved the engagement of Qatalyst to serve as Smartsheet's financial advisor in connection with potential strategic transactions.

33.     At the same meeting, the Board also approved the formation of a committee ("Transaction Committee") to facilitate the Board's active involvement in Smartsheet's consideration of strategic alternatives, including "***potential negotiations***" with Blackstone and Vista (albeit without the authority to approve any transaction). The Proxy states that the Transaction Committee "was not created to address any actual or perceived conflict of interest."

34.     The Transaction Committee was comprised of the following directors whom the Proxy characterizes as "***independent***": Defendants Gregoire, McIlwain, Rooney, and Shipchandler. The following facts, however, call the "independence" of Defendants Rooney and McIlwain from Blackstone into question, namely: (i) Defendant Rooney's prior existing relationship with Blackstone while Rooney was Alight's CFO during which time Blackstone's representatives approved compensation of approximately $31.5 million for Rooney, and (ii) the ongoing co-investing relationship between Blackstone, and Madrona, McIlwain's VC firm, in a

software company called Clari, where representatives of Blackstone and Madrona presently serve on the board of directors.

35.     In light of Rooney's past relationship with Blackstone during which she earned $31.5 million, and Madrona's current co-investing relationship with Blackstone, the Proxy's statement that Defendants Rooney and McIlwain are independent is materially false, or at a minimum, is a misleading "half-truth" because the Proxy fails to disclose the potential conflicts of Defendants Rooney and McIlwain with respect to Blackstone based on their lucrative ties with Blackstone. Further, in light of the potential conflicts of Rooney and McIlwain with respect to Blackstone, the Proxy's statement that the Transaction Committee "was not created to address any actual or perceived conflict of interest" is a misleading half-truth because while it discloses that no perceived conflict motivated the formation of the Transaction Committee, it fails to mention that Rooney and McIlwain faced potential conflicts with respect to Blackstone based on their lucrative ties with Blackstone.

**The Transaction Committee Runs the Sale Process and Negotiates the Merger with Blackstone and Vista**

36.     On July 1, 2024, Blackstone and Vista informed Qatalyst that they may submit a revised proposal to acquire Smartsheet after July 4, 2024.

37.     On July 8, 2024, Blackstone and Vista submitted a non-binding indication of interest to acquire all the outstanding shares of Smartsheet's common stock for $56.50 per share in cash ("July 8 Proposal")—a mere $0.25 per share increase from the January 24 Proposal.

38.     On July 9, 2024, the Transaction Committee held a meeting to review the July 8 Proposal during which Qatalyst provided a preliminary analysis of the July 8 Proposal. The Transaction Committee then discussed, together with Qatalyst and Fenwick, the response to Blackstone and Vista, and whether it would be in the best interests of Smartsheet and its

shareholders to approach other financial sponsors and strategic parties to determine their interest in pursuing an acquisition of Smartsheet. After this discussion, the Transaction Committee determined that it would not enter into exclusive negotiations with Blackstone and Vista, and to approach Party A, Party B, one additional financial sponsor ("Party C") and one strategic party ("Party D"), to determine their interest in submitting a proposal to acquire Smartsheet. The Transaction Committee then directed Qatalyst to reach out Blackstone and Vista, and Parties A, B, C, and D, concerning the conduct of due diligence.

39.     On July 11 and 12, 2024, Party D spoke with Qatalyst and expressed an interest in evaluating a transaction with Smartsheet, while Party C informed Qatalyst that it was not in a position to evaluate or pursue an acquisition of Smartsheet.

40.     From July 15 to July 16, 2024, Smartsheet provided Blackstone, Vista, Party A, Party B and Party D with access to an electronic data room containing non-public financial information about Smartsheet, including among other things, a management presentation with detailed information on Smartsheet's product roadmap, new pricing model, go-to-market plans, as well as a three year forecast prepared in June 2024.

41.     On July 16, 2024, the Transaction Committee met with Qatalyst. Qatalyst informed the Transaction Committee that Blackstone had requested approval to provide confidential information to three of its limited partners, including ADIA, pursuant to the terms of the confidentiality agreements with Blackstone and Vista. The Transaction Committee approved the request with respect to these three limited partners, on a non-exclusive basis, and directed Smartsheet's senior management and Qatalyst to continue engaging with Blackstone and Vista to generate an acquisition proposal.

42.     On July 19, 2024, Party B informed a representative of Qatalyst that it was not

interested in further considering an acquisition of Smartsheet. On the same day, a financial sponsor ("Party E") contacted Qatalyst and indicated that Party E was interested in evaluating a potential acquisition.

43.     On July 25, 2024, two financial sponsors ("Party F" and "Party G," respectively) contacted Qatalyst to indicate their interest in participating in a potential acquisition of Smartsheet. On the same day, Party E contacted Qatalyst to reiterate Party E's interest in discussing a potential acquisition of Smartsheet. Additionally, another financial sponsor ("Party H") contacted Smartsheet's CFO to convey its interest in discussing a potential acquisition of Smartsheet.

44.     On July 26, 2024, Blackstone and Vista informed Qatalyst that, before submitting another proposal, they needed more time to better understand the trajectory of Smartsheet's bookings, the financial impact of the changes to Smartsheet's pricing and packaging model, and the anticipated results of Smartsheet's fiscal quarter ended July 31, 2024.

45.     On July 29, 2024, the Transaction Committee met with Qatalyst to review the expressions of interest that were received from Party E, Party F, Party G and Party H. After the discussion, the Transaction Committee directed members of Smartsheet management and Qatalyst to continue engaging with Blackstone and Vista with respect to a revised acquisition proposal. Further, the Transaction Committee directed Qatalyst to engage with Party E and Party G to determine their interests in pursuing a potential acquisition transaction, but *not* to engage in further discussions with Party F or Party H at such time due to the Transaction Committee's belief that such parties did not have sufficient capital to handle a transaction a company of Smartsheet's size.

46.     On August 8, 2024, the chief executive officer of a strategic party ("Party I") contacted Mader to express interest in potentially making a proposal for a business combination transaction.

10

47.    On August 21, 2024, Blackstone and Vista submitted a revised non-binding indication of interest to acquire all of the outstanding shares of Company common stock for $56.50 in cash ("August 21 Proposal")—***no increase from the July 8 Proposal***. The Consortium indicated that the August 21 Proposal was the Consortium's "best and final offer."

48.    On August 22, 2024, the chief executive officer of Party I spoke with Qatalyst about the current status of the potential sale process and the feasibility of Party I making a definitive proposal.

49.    On August 23, 2024, the Transaction Committee met with Qatalyst to discuss the August 21 Proposal, review a preliminary financial analysis of the proposal, and formulate a response to the proposal.  The Transaction Committee instructed Qatalyst to inform Blackstone and Vista that Smartsheet would proceed to further due diligence information and negotiate a definitive agreement based on the terms in the August 21 Proposal, provided that the Transaction Committee also sought, among other terms a 45-day "go-shop" period. Separately, the Transaction Committee and Qatalyst also reviewed Qatalyst's continued interactions with other potential counterparties. Qatalyst subsequently conveyed the Transaction Committee's positions to Blackstone and Vista.

50.    On September 13, 2024, the Transaction Committee met with Smartsheet management and Qatalyst. Qatalyst updated the Transaction Committee on the status of confirmatory due diligence discussions with Blackstone and Vista. A representative of Fenwick then reviewed with the Transaction Committee and the other members of the Board the material terms of the draft Merger Agreement.

51.    On September 19, 2024, the Transaction Committee met with Fenwick concerning negotiations over the terms of the Merger Agreement; the Transaction Committee provided

direction to Fenwick with respect to certain open issues. The Transaction Committee then instructed members of Smartsheet's senior management, and Qatalyst and Fenwick to continue negotiations concerning the Merger with Blackstone and Vista.

52.     At the same meeting, the Transaction Committee reviewed the relationship disclosure letter previously provided by Qatalyst on September 11, 2024, and the information disclosed did not impair the ability of Qatalyst to provide financial advisory services to Smartsheet. The Proxy then states that, in addition, "***each member of the Transaction Committee confirmed that he or she <u>did not</u> have <u>any</u> material relationships with Vista, Blackstone or Platinum Falcon.***" This statement was false and misleading based on the potential conflicts of Defendants Rooney and McIlwain with respect to Blackstone, as discussed above and in further detail below.

53.     On September 24, 2024, the Board held a meeting where Qatalyst then rendered to the Board its oral opinion, subsequently confirmed in writing, that the Merger Consideration was fair to Smartsheet shareholders and the Board approved entry into the Merger Agreement.

54.     Later that morning, the Merger Agreement and the related transaction documents were executed. Before the opening of trading on NYSE, Smartsheet issued a press release announcing entry into the Merger Agreement.

**Rooney's Past Material Relationship With Blackstone Generating $31.5**
**<u>Million in Compensation for Rooney</u>**

55.     In January 2009, Rooney joined the treasury department at Aon, a global provider of risk management, retirement and health solutions to clients. Soon after, she was tasked with raising capital to help finance Aon's $4.9 billion acquisition of human resources solutions provider Hewitt Associates. After the acquisition, Rooney helped determine the strategic road map for the newly formed Aon Hewitt, and in January 2016, she was named Aon Hewitt's CFO.

56.     On February 10, 2017, Blackstone announced that it had agreed to acquire Aon Hewitt's technology-enabled benefits and human resources outsourcing ("HR") platform for $4.8 billion in cash, including $4.3 billion at closing, and additional consideration of up to $500 million based on future performance. In her capacity as Aon Hewitt's CFO, Rooney was actively involved in carving out the HR platform from Aon in connection with the sale to Blackstone.

57.     After closing the acquisition of the HR platform, Blackstone renamed it Alight Solutions ("Alight"), and in May 2017, Rooney became the CFO of Alight (which had approximately 22,000 employees at the time). As Rooney's LinkedIn profile states, "[t]hrough Aon's $4.8bn divestiture of its technology-enabled outsourcing assets to *Blackstone*, I am honored to be *the CFO* of Alight [S]olutions, the 25-year-new leader in benefits administration and cloud-based HR and financial solutions." During Rooney's tenure as Alight's CFO, while Alight was privately-owned by Blackstone, Rooney's compensation was obviously determined by Blackstone.

58.     On January 25, 2021, Alight announced that it had agreed to go public via a business combination ("SPAC Combination") with a SPAC, Foley Trasimene Acquisition Corp. ("FTAC").

59.     On July 5, 2021, Alight announced it had closed the SPAC Combination with FTAC, and that Alight's Class A common stock and warrants would begin trading on the NYSE under the ticker symbols "ALIT" and "ALITW," respectively. The announcement advised that, to commemorate the merger and the first day of trading, "Chief Executive Officer Stephan Scholl, *Chief Financial Officer Katie Rooney*, and other members of the company's management team would ring the opening bell at the NYSE."

60.    The announcement quoted Peter Wallace ("Wallace"), Global Head of Core Private Equity at Blackstone, who said, "[s]ince 2017, we have been proud to partner with Alight **and its management team** as they grow and transform the business to be the pre-eminent provider of health, wealth and global payroll solutions. We believe Alight has significant runway to accelerate growth with both organic and inorganic opportunities, and we look forward to continuing our relationship."

61.    After Alight went public, Blackstone had two representatives on the Alight board of directors, Wallace, and David Kestnbaum ("Kestnbaum"). According to Alight's annual proxies for 2022 and 2023 (covering fiscal years 2021 and 2022), Wallace served as one of the three members of the Alight board's Compensation Committee, which reviewed and approved the compensation of Alight's officers and key employees, **including Rooney**.

62.    In August 2023, Rooney was appointed Alight's COO and Global CFO.

63.    On September 1, 2023, Alight announced that Kestnbaum and Wallace were stepping down from their positions as members of the Alight board. Wallace also stepped down from his position as a member of the Compensation Committee.

64.    Rooney was extremely well-compensated while Alight was privately-owned by Blackstone, and during the time that Wallace served on the Alight Board's Compensation Committee during Alight's 2021 and 2022 fiscal years, and during Alight's 2023 fiscal year through September 1, 2023.

65.    According to Alight's 2022 Annual Proxy, Rooney earned $816,786 in 2020, and $23,525,043 in 2021, including $22,505,156 from restricted stock unit awards.

66.    According to Alight's 2023 Annual Proxy, Rooney earned an additional $2,873,334 in 2022, and according to Alight's 2024 Annual Proxy, Rooney earned an additional $4,259,864

in 2023. Thus, from 2020 to 2023, while Blackstone's representatives were responsible for determining Rooney's compensation, ***Rooney earned approximately $31.5 million***.

67.    On May 8, 2024, Alight announced that Rooney was stepping down as CFO, but remaining as COO until the closing of Alight's Payroll and Professional Services divestiture.

68.    Based on the foregoing, it appears that Rooney was appointed to the Smartsheet Board on account of her past ties to Blackstone. Notably, as noted above, Blackstone met with Defendant Mader on June 12, 2023, to discuss aspects of Smartsheet's business and strategic opportunities. Then, on February 2, 2024, Blackstone called Mader to further discuss Blackstone's interest in Smartsheet.

69.    Subsequently, on March 22, 2024, Smartsheet announced the appointment of Rooney to the Smartsheet Board. The announcement quoted Marder who stated that "Katie combines deep financial expertise with diverse industry and sector knowledge. Her experience in corporate strategy and market positioning will serve us well as we expand our enterprise-grade work management platform to organizations of all sizes, globally." Given Marder's discussions with Blackstone on February 2, 2024, concerning a potential transaction, and Rooney's longstanding relationship with Blackstone as Alight's CFO, the timing of Rooney's appointment to the Smartsheet Board can hardly have been a coincidence.

**Co-Investing Relationship of Blackstone and McIlwain's VC Firm, Madrona**

70.    McIlwain has current ties to Blackstone. As noted, McIlwain is a managing director at Madrona, a prominent venture capital firm.

71.    Madrona first invested in October 2019 in the $60 million Series D round of a company called Clari, which provides AI-based software to businesses to help them manage their

revenue-related operations. Madrona invested again in Clari in its $150 million Series E round in March 2021.

72.    On January 19, 2022, Clari announced that it had closed a $225 million Series F round led by funds affiliated with *Blackstone*. Madrona participated in Clari's Series F funding round led by Blackstone.

73.    Steve Singh, a Managing Director at Madrona Venture Group, presently sits on the Clari Board alongside Vishal Amin, a Managing Director at Blackstone.

**The Proxy Contains Materially False Statements and Material Omissions That Render Statements in the Proxy Misleading**

74.    Defendants disseminated a false and misleading Proxy to Smartsheet stockholders that makes false statements, and omits material information that render statements in the Proxy misleading "half-truths," and thus deprive Plaintiff and other Smartsheet stockholders of their right to cast fully informed votes with respect to the Merger. Specifically, based on the past material relationship between Rooney and Blackstone at Alight during which Blackstone's representatives approved payment of $31.5 million in compensation to Rooney, and the current co-investing relationship in Clari between Blackstone and McIlwain's firm, Madrona, there are three relevant statements in the Proxy that are materially false, and/or rendered misleading "half-truths" by material omissions.

75.    *First*, the Proxy affirmatively states at page 39 that the "Transaction Committee was not created to address any actual or perceived conflict of interest" ("Perceived Conflicts Statements"). In light of the potential conflicts of Defendants Rooney and McIlwain with respect to Blackstone posed by (i) the past material relationship between Rooney and Blackstone at Alight (during which Blackstone's representatives approved payment of $31.5 million in compensation to Rooney), and (ii) the current co-investing relationship at Clari between Blackstone and

McIlwain's firm, Madrona—both as described in further detail below—the Perceived Conflicts Statement is a misleading "half-truth;" that is, it asserts that no potential conflict motivated the formation of the Transaction Committee, but fails to disclose the existing potential conflicts of Rooney and McIlwain with respect to Blackstone.

76.     *Second*, the Proxy affirmatively states at page 39 that the members of the Transaction Committee were "independent" ("Independence Statement"). When used in a proxy, "independent" means able to act in the best interests of shareholders free of extraneous influences and conflicts. *See Enzo Biochem, Inc. V. Harbert Discovery Fund, LP*, 2021 WL 4443258, at *10 (S.D.N.Y. Sept. 27, 2021). Accordingly, the Independence Statement is false since the ability of Rooney and McIlwain to act without consideration of Blackstone's interests is called into question by (i) the past material relationship between Rooney and Blackstone at Alight during which Blackstone's representatives approved payment of $31.5 million in compensation to Rooney, and (ii) the current co-investing relationship between Blackstone and McIlwain's firm, Madrona (both as described in further detail below). Alternatively, at a minimum, the Independence Statement is rendered a misleading "half-truth" by the failure to disclose the potential conflicts of Rooney and McIlwain with respect to Blackstone that would have rendered them unwilling to negotiate vigorously against Blackstone.

77.     *Third*, the Proxy affirmatively states at page 47 that "each member of the Transaction Committee confirmed that he or she did *not* have *any* material relationships with Vista, Blackstone or Platinum Falcon" ("Material Relationships Statement"). The phrase "did not" is a past tense structure used to report a past event. *See Franklin v. Am. Fam. Connect Prop. & Cas. Ins. Co.*, 2024 WL 3548801, at *8 (Mich. Ct. App. July 25, 2024) ("did not" is past tense). In light of the potential conflicts of Defendants Rooney and McIlwain with respect to Blackstone, as

17

further detailed below, Material Relationships Statement is materially false since (i) Rooney had a past "material relationship" with Blackstone by virtue of serving as the CFO of Alight while Alight was owned by Blackstone and Blackstone was determining Rooney's compensation (which totaled $31.5 million), and (ii) Blackstone and McIlwain's firm, Madrona, *currently* have a co-investing relationship in Clari.

78.    In sum, it is materially false and misleading for the Proxy to characterize Rooney as "independent" of Blackstone, and to state that Rooney "did not" have "any" material relationship with Blackstone. Rooney's prior relationship with Blackstone as Alight's CFO plainly created a sense of owingness to Blackstone on account of the substantial compensation paid to Rooney (and career opportunities made available to her) as Alight's CFO while Alight was privately-owned by Blackstone, and thereafter when Wallace served on the Alight Board's Compensation Committee after the SPAC Combination. *See Allen v. Harvey*, 2023 WL 7122641, at *6 (Del. Ch. Oct. 30, 2023) (having been told that chair of Special Committee was "independent from Blackstone," target's stockholders "were entitled to know of her ties to Blackstone;" the failure to do so rendered the proxy "materially misleading and incomplete.").

79.    Further, it is materially false and misleading for the Proxy to characterize McIlwain as "independent" of Blackstone, and to state that McIlwain "did not" have "any" material relationship with Blackstone, when there is an ongoing co-investing relationship between Blackstone and McIlwain's VC firm, Madrona. *See Sandys v. Pincus*, 152 A.3d 124, 133 (Del. 2016) (holding that "precisely because of the importance of a mutually beneficial ongoing business relationship [between venture capitalists who had co-invested and served together on company boards], it is reasonable to expect that sort of relationship might have a material effect on the parties' ability to act adversely toward each other.").

## CLASS ACTION ALLEGATIONS

80.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of a class ("Class") consisting of all individuals and entities that were Smartsheet stockholders of record as of the close of business on October 25, 2024 (the record date in the Proxy) ("Class Period"). Excluded from the Class are: (i) Defendants and members of their immediate families; (ii) the officers and directors of Smartsheet and members of their immediate families; and (iii) any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

81.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

82.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, the Proxy discloses that 139,300,914 Smartsheet shares were issued and outstanding as of October 25, 2024.

83.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws, as specified above.

84.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests antagonistic to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in securities class action litigation of this nature.

85.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*, whether (i) Defendants have violated

Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder; (ii) the Individual

Defendants have violated Section 20(a) of the Exchange Act; and (iii) Plaintiff and the other

members of the Class are entitled to injunctive relief.

86.     A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action.

87.     Defendants have acted, or refused to act, on grounds generally applicable to the

Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on

behalf of the Class is appropriate.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants**
**for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

88.     Plaintiff incorporates and repeats each and every allegation above as if fully set

forth herein.

89.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of

the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form
> of proxy, notice of meeting or other communication, written or oral, containing any
> statement which, at the time and in light of the circumstances under which it is
> made, is false or misleading with respect to any material fact, or which omits to
> state any material fact necessary in order to make the statements therein not false
> or misleading or necessary to correct any statement in any earlier communication
> with respect to the solicitation of a proxy for the same meeting or subject matter
> which has become false or misleading.

90.     Defendants disseminated a false and misleading Proxy, which made statements that

are false and misleading, and omitted material facts necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading "half-truths" in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

91.     By virtue of their positions within Smartsheet, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

92.     Yet, as specified above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy, and/or (ii) omitted material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce Smartsheet stockholders to vote in favor of the Merger. Defendants were at least negligent in filing the Proxy with materially false and misleading statements and omissions.

93.     The material misrepresentations and omissions in the Proxy specified above are material insofar as a reasonable Smartsheet Stockholder would view disclosure of the omitted facts specified above as significantly altering the "total mix" of information made available to Smartsheet stockholders.

94.     Since, according to the Proxy, approval of the Merger by a simple majority of Smartsheet stockholders is "necessary to complete the Merger," the Proxy soliciting the votes of Smartsheet stockholders is an essential link in the accomplishment of the Merger. Thus, causation is established.

95.     Plaintiff and other Smartsheet stockholders have no adequate remedy at law, and are threatened with irreparable harm insofar as Plaintiff and other Smartsheet stockholders will be

deprived of their entitlement to cast fully informed votes with respect to the Merger if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

96.     Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

97.     The Individual Defendants acted as controlling persons of Smartsheet within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as officers and/or directors of Smartsheet, and participation in, and/or awareness of the negotiation of the Merger, and/or intimate knowledge of the contents of the Proxy filed with the SEC in order to solicit the votes of Smartsheet stockholders to vote in favor the Merger, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Smartsheet with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that are materially false and misleading, and the omission of material facts specified above.

98.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements that were false and misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

99.     Each of the Individual Defendants had direct and supervisory involvement in the negotiation and approval of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged

herein, and exercised same.

100.    By virtue of the foregoing, the Individual Defendants had the ability to exercise control over and did control a person or persons who violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.

101.    Plaintiff and other Smartsheet stockholders have no adequate remedy at law, and as a result of the Individual Defendants' violations of Section 20(a) of the Exchange Act, are threatened with irreparable harm by virtue of being deprived of their entitlement to cast fully informed votes with respect to the Merger. Therefore, injunctive relief is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure; appointing Plaintiff as the Class Plaintiff; and appointing Plaintiff's counsel as Class Counsel;

B.    Enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to Smartsheet stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

C.    Finding Defendants liable for violating Sections 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

D.    Finding the Individual Defendants liable for violating Section 20(a) of the Exchange Act;

E.      Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff and other Smartsheet stockholders rescissory damages;

F.      Directing Defendants to account to Plaintiff and other Smartsheet stockholders for all damages suffered as a result of their misconduct;

G.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

H.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 14, 2024                    Respectfully submitted,

                                            By:/s *Juan Monterverde*

                                            Juan Monterverde (JM8169)
                                            **MONTEVERDE & ASSOCIATES PC**
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4740
                                            New York, New York 10118
                                            Tel: 212-971-1341
                                            Fax: 212-202-7880
                                            jmonteverde@monteverdelaw.com

                                            Joshua E. Fruchter
                                            **WOHL & FRUCHTER LLP**
                                            25 Robert Pitt Drive, Suite 209G
                                            Monsey, NY 10952
                                            Tel. (845) 290-6818
                                            Fax. (718) 504-3773
                                            jfruchter@wohlfruchter.com

                                            Joshua M. Rubin
                                            **WEISS LAW**
                                            305 Broadway, 7th Floor
                                            New York, NY 10007
                                            Tel: (212) 682-3025
                                            Fax: (212) 682-3010

Email: jrubin@weisslawllp.com

Michael A. Rogovin
**WEISS LAW**
476 Hardendorf Ave. NE
Atlanta, Georgia 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff and the Proposed Class*